SOLON BRESEE, ADM'R, v. GEO. S. WALKER, EX'R.

[IN CHANCERY.]

*Specific Performance of Ante-Nuptial Agreement. Will.*
*Trust. Husband and Wife. Presumption.*

1. The wife owned a two-fifths, and her husband a three-fifths, undivided interest in a home farm, and in their old age they conveyed by joint deed certain portions of the land, and the proceeds were appropriated for their mutual benefit and support; *Held*, that on the death of both, their heirs took only the respective share that each owned in the remainder; and that the husband's executor was not bound to account; as the presumption is that each obtained his just proportion.

2. A will making an ante-nuptial agreement a part of it, was construed to mean that the testator's wife took nothing under it unless she survived him, and she having deceased first, that her heirs took nothing.

BILL IN CHANCERY. Heard on the pleadings and a special master's report, September Term, 1885, WALKER, Chancellor. Bill *pro forma* dismissed.

The master found, in part:

" On February 31, 1860, they sold by their joint deeds three parcels of land from said farm, for the sum in all of $4,242, and another parcel was also at same time so sold for the sum of $300, leaving in the farm about fourty-four acres of arable land and twenty-four acres of swamp. The purchase price of one of said parcels, $1,550, was secured by mortgage, and after some payments made thereon, said mortgage was ultimately foreclosed and the land taken back in 1879, after his death. This parcel of said land was afterwards sold by his executors at a price whereby somewhat less was netted from the entire transaction than the amount of said $1,550 and interest. The loss was not large, however.

" The proceeds of said other sales, together with the receipts of said Whitfield otherwise, and the income of said farm during said coverture, were appropriated by said Whitfield and Hannah for their mutual benefit, support and enjoyment, as is usual in the ordinary management of a simple and frugal country

family; some slight repairs were made from time to time, a little money was expended for the benefit of his children, and the residue ultimately became part of his estate at his death, she leaving no separate estate. At the time of said sales, said land had appreciated in value, so that the entire farm was then worth $7,000."

The intestate wife deceased June 1, 1868, and the testator deceased in March, 1877.

"He had the use of said two-fifths of said remaining real estate for nine years after her death, which use was worth at least $50 per year.

"After his death his executor had the use of said two-fifths of said remaining real estate for four years, for which they received at least $200 in all. Said remaining land was then sold by agreement, without prejudice, and two-fifths of the proceeds thereof have been paid to the orator, being $1,290.

"At the prices actually realized for said farm as it was sold from time to time during said Whitfield's life and after his death, the two-fifths thereof covered by said deed to said Hannah realized a little over $3,000."

*W. C. Dunton* and *Edward Dana*, for the orator.

If the husband receives the capital funds of his wife's separate property, there is no presumption that she intended to give or transfer it to him. He is *prima facie* a trustee for her, and a gift from her to him will not be presumed without clear evidence. *Rich* v. *Cockell*, 9 Ves. 369; *Porter* v. *Bank of Rutland*, 19 Vt. 410; *Allbe* v. *Cole*, 39 Vt. 322; *Child* v. *Pearl*, 43 Vt. 227; *Richardson* v. *Merrill*, 32 Vt. 27; *Lamphrey* v. *Watson*, 43 Ala. 377; *Marsh* v. *Marsh*, 43 Ala. 677; *White* v. *Waite*, 37 Vt. 502; 2 Perry Trusts, s. 679.

*J. W. Stewart*, for the defendant, argued substantially as the court hold.

The opinion of the court was delivered by

ROYCE, Ch. J. The orator bases his right to a decree, first, upon the ground that there was an agreement entered into be-

tween the testate and the intestate that upon the death of the testate the intestate or her heirs should have the sum of $3,000 out of his estate. The master has found that such an agreement, substantially, was made, but reports that his finding rests upon the construction that he has given to the first codicil made to the will of the testator; and that unless it properly bears such construction, there was not sufficient evidence to warrant the finding of such an agreement, or of any agreement between the parties, beyond what is expressed in the will and codicil, viewed in the light of the attending facts and circumstances; so that whether such an agreement was made, depends upon the construction to be given to said will and codicil, aided by the facts and circumstances found and referred to by the master.

The will of the testator, executed September 17, 1862, refers to an ante-nuptial contract made between himself and the intestate, and makes it, as explained and modified by the will, a part of said will. The ante-nuptial agreement was executed April 14, 1848, and by it the intestate transferred all her property, real and personal, to the testator, in consideration of having received from him a deed of two-fifths of his real estate and a bond to remove all encumbrances on the same, and the right, in case she should survive the testator, to certain enumerated personal property; and she agreed to make no claim to dower or an assignment of personal property from his estate, and discharged his estate and his heirs from the payment of any other sum in consequence of her having been the wife of the testator; and if, after the death of the testator, his heirs or representatives should wish to purchase the two-fifths of said real estate that had been conveyed to her, they should have the privilege of doing so by paying her within one year after the decease of the testator the sum of $2,000, which was its estimated value.

The testator and intestate were married April 16, 1848, and occupied said real estate, together with the other three-fifths owned by the testator, until 1860, when they, by their joint

deeds, sold certain portions of it, and the proceeds were appropriated by them for their mutual benefit, support and enjoyment. The intestate died June 1, 1868. The remaining portion of said real estate has, by agreement, been sold by the executor of the testator, and two-fifths of the proceeds,— $1,290,—has been paid to the orator.

By the ante-nuptial agreement the intestate obligated herself to reconvey to the testator's heirs or legal representatives, the real estate that had been conveyed to her, upon the payment to her of $2,000, as provided in said agreement. If they failed to make said payment, the title would remain in her, discharged from any obligation to reconvey it; and no such payment was made, or demand made for a conveyance by her. At the time the will was executed the real estate had so increased in value that the testator, in the language used by him, deemed it right that the sum to be paid her should be increased above that stipulated in the ante-nuptial contract, and that contract is referred to as explanatory of the amount stipulated to be paid. That contract, as we have seen, made the right of the intestate to any sum dependent upon the election of the heirs or representatives of the testator to claim a conveyance of the real estate to themselves; and in case such an election was made, the amount to be paid was fixed at $2,000. The bequest made by the will to the intestate, and which is confirmed by the codicil, was made upon the express condition that she should survive the testator; and although the whole will is mysteriously expressed, considering it in connection with the papers that are made a part of it, it is obvious that the testator did not intend by it to make any provision for his wife in case she did not survive him; and that in case of her survival he intended to release her from the obligation to convey the property deeded by him under the ante-nuptial contract unless she was paid $3,000 therefor.

The construction put upon the will and codicil by the master, and upon which he based the contract found by him, was erroneous. The intestate did not derive any beneficial interest

under the will and codicil; and no such agreement as is alleged in the bill having been found upon competent evidence, the orator is not entitled to decree upon that ground; and admitting that the bill is so framed that specific performance might be decreed under it, there is no contract found the performance of which could be decreed.

It is further claimed that the testator became the trustee of the intestate on account of the sales made of real estate in 1860. The lands so sold were conveyed by their joint deeds; and it is found that the proceeds were appropriated by them for their mutual benefit, support and enjoyment. There was no trust relation created by contract; and inasmuch as the proceeds of the property in which they were jointly interested were mutually appropriated by them for their mutual benefit, the presumption would be that each obtained his just proportion.

It does not appear that the testator ever had any property of the intestate in his hands or possession that should be accounted for, so no order requiring him to account as trustee should be made.

The decree of the Court of Chancery dismissing the bill is affirmed, and cause remanded.